UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| WORLD WIDE TRAVEL INCORPORATED, *et al.*, |
|     Plaintiffs, |
|         v. |
| TRAVELMATE US, INC., *et al.*, |
|     Defendants. |

Civil Action No. 13-1333 (JEB)

MEMORANDUM OPINION

World Wide Travel Incorporated, a travel agency located in Washington, D.C., hired Travelmate US, Inc., a California advertising firm, to promote its business online.  After a dispute over charges, World Wide Travel and its owners sued Travelmate and several of its employees in D.C. Superior Court.  Defendants removed the case to this Court, and now Travelmate and its owner, Ritu Singla, have moved to dismiss, arguing that they are not subject to personal jurisdiction in this forum and that Plaintiffs have failed to state a cause of action against them.  As the Court agrees with the former argument, it need not reach the latter.  The only relevant contact that either Defendant has with the District of Columbia is that, after offering their services to World Wide Travel, they entered a contract with the company.  This is not enough to permit the Court to exercise personal jurisdiction over them consistent with the Due Process Clause.  The Court, accordingly, must grant Defendants' Motion.

I.      Background

The relevant facts here are largely undisputed.  In setting forth the background, the Court nonetheless resolves any factual discrepancies in favor of Plaintiffs.  Usha and Laxmi Chand are

1

the President and Vice-President/Secretary, as well as the sole shareholders, of World Wide

Travel Incorporated, a travel agency located and incorporated in the District of Columbia. <u>See</u>

Compl., ¶¶ 12-13; Opp., Exh. 7 (Declaration of Usha Chand), ¶ 3. WWT transacts business

using an American Express credit card account opened by Usha Chand and for which she is

personally liable. <u>See</u> Compl., ¶ 4. The Chands live in Virginia. <u>See</u> <u>id.</u>, ¶ 3.

In 2004, a WWT employee arranged for the Chands to sponsor Ritu Singla, an Indian

national, to move to the United States in order to work for WWT. <u>See</u> <u>id.</u>, ¶¶ 15-17; Mot., Exh. 1

(Declaration of Ritu Singla), ¶ 4. Shortly after Singla arrived, however, she quit her job at WWT

and left Washington for Texas, and then for California, where she resides today. <u>See</u> Singla

Decl., ¶ 4. Little did the Chands know that their association with Singla had only just begun.

Five years later, in February 2009, the Chands told their employees that they were

looking for help promoting WWT over the Internet. <u>See</u> Chand Decl., ¶ 11. Before long, Laxmi

Chand was contacted by an agent of Travelmate US, Inc. (TMI), an online-advertising firm

located and incorporated in California. <u>See</u> <u>id.</u>, ¶12; Singla Decl., ¶ 6. The agent explained that

TMI could advertise WWT as a "sponsored result" on Google's website and later sent a contract

to WWT's D.C. office, which Mr. Chand executed. <u>See</u> Chand Decl., ¶¶ 13-14; Compl., ¶¶ 26-

28. Over the course of the next several months, WWT communicated with TMI by emailing

with a Project Manager known only as "Tanya." <u>See</u> Compl., ¶ 36; Opp., Exh. 3 (Tanya Emails).

Unbeknownst to the Chands, TMI was owned and operated by their erstwhile friend, Ritu Singla.

<u>See</u> Singla Decl., ¶ 6; Chand Decl., ¶ 23.

WWT's contract with TMI provided that WWT would pay a monthly rate of $3,225 in

exchange for TMI placing WWT as a first-page sponsored result when Google users queried

specific "keyword" search terms. <u>See</u> Compl., ¶¶ 29-31; Compl., Exh. 1 (TMI Contract). But in

2

October and November of 2010, the Chands discovered that TMI had assessed monthly charges

of $8,990 and $8,150 to WWT's American Express account.  See Compl., ¶ 34.  The Chands

instructed TMI not to make any further charges on WWT's account until they received

documentation for the charges, and in the meantime they notified American Express that those

charges were in dispute.  See id., ¶¶ 36-39.

TMI then submitted invoices for the charges, which revealed that it had never used a

number of the agreed-upon keywords and that it had repeatedly overcharged WWT for the ones

that it had used.  See id., ¶¶ 41-56.  Further investigation also revealed that starting around June

2009, TMI had begun charging WWT on a "per click" rather than a "keyword" basis, without

consultation or approval from WWT.  See id., ¶¶ 33, 68-69.  Even the click-based invoices,

however, could not explain the superfluous charges, since they vastly overestimated the number

of clicks that WWT's advertisements had actually received.  See id., ¶¶ 60-61.

Fed up, the Chands filed this lawsuit alleging claims of fraud, fraud in the inducement,

and civil conspiracy against TMI and Singla, as well as against two individuals who they believe

are involved with TMI's business, Tanya Doe and John Doe.  See id., ¶¶ 8-9, 94-107.

Alternatively, the Chands suggest that "Tanya" may have been a false identity that Singla

assumed in order to do business with them.  See id., ¶ 105.  TMI and Singla have now moved to

dismiss the Complaint for lack of personal jurisdiction and for failure to state a claim.  Although

Defendants deny the existence of "John Doe," see Mot. at 17, and Singla attests that she has

never used the name "Tanya" as a pseudonym, see Singla Decl., ¶ 10, the Court may only

address what is in front of it – namely, the Motion brought by TMI and Singla –  and thus does

not consider the propriety of the Does as Defendants.

## II.     Legal Standard

Because this case turns on personal jurisdiction, the Court will recite only the legal standard for the resolution of that issue.  Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over him.  The plaintiff bears the burden of establishing personal jurisdiction, FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008), and the requirements for personal jurisdiction "must be met as to each defendant."  Rush v. Savchuk, 444 U.S. 320, 332 (1980).  In deciding whether the plaintiff has shown a factual basis for personal jurisdiction over a defendant, the court resolves factual discrepancies in favor of the plaintiff.  See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990).  When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion."  5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing.  See id.

## III.     Analysis

The Court will first analyze the personal-jurisdiction question and will then briefly examine whether transfer of the case is warranted.

### A.  Personal Jurisdiction

Neither TMI nor Singla is a resident of the District of Columbia, and so the Court may only exercise personal jurisdiction over them if it is both empowered by D.C.'s long-arm statute and permitted by the Constitution's Due Process Clause.  See United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995); Daley v. Alpha Kappa Alpha Sorority, Inc., 26 A.3d 723, 727 (D.C. 2011); see also Fed. R. Civ. P. 4(k)(1)(A).  This requirement translates into a two-step inquiry:

the Court "first examine[s] whether jurisdiction is applicable under the … long-arm statute and then determine[s] whether a finding of jurisdiction satisfies the constitutional requirements of due process." GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).

The District of Columbia's long-arm statute provides several ways for a D.C. court to obtain personal jurisdiction over a non-resident defendant. See D.C. Code § 13-423.  Plaintiffs invoke two of these bases here.  First, they argue that the Court has "specific jurisdiction" over Defendants because they "transact[ed] business in the District of Columbia."  § 13-423(a)(1).  Second, they contend that the Court also has specific jurisdiction over Defendants because they "cause[ed] tortious injury in the District of Columbia."  § 13-423(a)(3) & (4).  As a third and independent ground for personal jurisdiction, Plaintiffs rely on D.C. Code § 13-334(a), which permits a court to exercise "general jurisdiction" over a non-resident defendant in certain circumstances.[1]

As explained below, the Court concludes that none of these three bases is sufficient for the simple reason that neither Defendant has the requisite "minimum contacts" with the District to permit the exercise of personal jurisdiction in this forum under the Due Process Clause. Because this conclusion does not rest on disputed issues of fact and does not require evidence beyond that submitted with the parties' briefs, the Court will decline Plaintiffs' request for a preliminary hearing and additional discovery on the matter.  See Opp. at 14, 26-27.

---

[1] Plaintiffs title a heading in their brief "Defendants Have Contracted to Supply Services for use in the District," Opp. at 20, which is technically an additional basis for personal jurisdiction enumerated in the D.C. long-arm statute.  See § 13-423(a)(2).  The section that follows that heading, however, never cites to that provision of the statute, and in fact only features cases and analysis related to the "transacting business" ground for jurisdiction.  See Opp. at 20-21. Because Plaintiffs have not offered any substantive argument on the "contracting to supply services" point, the Court will assume that they did not mean to invoke this basis for jurisdiction.  Even if they did, the Due Process Clause would still bar the Court from exercising jurisdiction under this prong.

1. *Specific Jurisdiction*

Specific jurisdiction permits a court to adjudicate those "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).  In other words, the case must arise from the defendant's contacts with the forum state.   D.C.'s long-arm statute enumerates the kinds of contacts with the District that are sufficient to bring a non-resident defendant into a D.C. court, two of which are at issue here: "transacting any business in the District of Columbia" and "causing tortious injury in the District of Columbia."  D.C. Code § 13-423(a)(1), (3), & (4).  The Court will take each in turn.

a. Transacting Business

The "transacting business" provision of the D.C. long-arm statute has been given an "expansive interpretation" rendering it "coextensive with the due process clause." Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting Mouzavires v. Baxter, 434 A.2d 988, 922 (D.C. 1981)).  This means that if a defendant transacts business here and a dispute arises from that transaction, he may be sued in the District so long as doing so would not violate the Due Process Clause.  See, e.g., Hardy v. Northern Leasing Systems, Inc., No. 13-0362, 2013 WL 3488489, at *3 (D.D.C. July 12, 2013); Schwartz v. CDI Japan, Ltd., 938 F. Supp. 1, 4 (D.D.C. 1996).  Put another way, § 13-423(a)(1) reaches out to non-resident defendants with as long an arm as the Constitution will allow.  Here, it is clear that Defendants transacted business in the District by entering into a contract to provide services to a D.C.-based corporation and that Plaintiffs' claims arise from that relationship.  See Mouzavires, 434 A.2d at 992.  As a consequence, "the statutory and constitutional jurisdictional questions, which are usually distinct,

6

merge into a single inquiry." Ferrara, 54 F.3d at 828.  A brief flashback to 1L Civil Procedure

reveals the seminal cases that establish the appropriate standard here.

The Due Process Clause permits a court to exercise jurisdiction over a non-resident

defendant so long as there are sufficient "minimum contacts" between the defendant and the

forum "such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The

defendant's contacts must be extensive enough that he "should reasonably anticipate being haled

into court" in the forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295

(1980).  "Random," "fortuitous," or "attenuated" contacts are not enough; although physical

presence in the forum is not necessary, the defendant must have somehow "purposeful[ly]

avail[ed]" himself of "the benefits and protections of the forum's laws." Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475-76 (1985) (internal quotation marks omitted).  While incantation

of these principles is a necessary starting point, their application to the facts at hand is more

involved.

Entering a contract with a forum resident clearly constitutes a "contact" with that forum,

but the Supreme Court has made just as clear that a contract alone is not sufficient to establish

personal jurisdiction over a non-resident defendant.  See id. at 478; see also Willis v. Willis, 655

F.2d 1333, 1338 (D.C. Cir. 1981); COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515,

524 (D.D.C. 1995) ("The mere existence of a contract between a non-resident and a resident is

not a sufficient basis on which to claim jurisdiction over the non-resident in the District of

Columbia.").  Something more is needed.  As for what that "something more" is, the Supreme

Court has suggested that courts consider factors such as the prior negotiations between the

7

parties, the contemplated future consequences of the business transaction at issue, the terms of

the contract, and the parties' actual course of dealing.  See Burger King, 471 U.S. at 479.

In this case, aside from the contract between Defendants and the D.C.-based Plaintiffs,

the only significant contact between either TMI or Singla and the District of Columbia is that

they reached out into the District in order to solicit Plaintiffs to purchase their online-advertising

services.  Plaintiffs emphasize that Defendants also mailed invoices to D.C. and that they billed

WWT by charging its credit-card account, but these are trifling contacts, and, in any event, the

credit card belonged personally to Ms. Chand, a Virginia resident, so it is not even clear that

charging that account would reflect availment of the District rather than of the Old Dominion.

Otherwise, Defendants are California based, which is where they performed the work of the

contract, and they do not maintain any offices, employ any staff, or regularly solicit business in

D.C.  The consequence of the transaction, moreover – WWT's appearance as a sponsored result

on Google – has no special connection to D.C.   And the contract itself is devoid of terms that

might suggest a relationship with the District, such as a D.C. choice-of-law or forum-selection

clause.  Cf. Hardy, 2013 WL 3488489, at * 4 ("The Lease agreement is a particularly weak

justification for invoking the D.C. long-arm statute.  By its terms, New York law governs, and

any litigation shall be brought in the federal or state courts in New York.").

The Court readily acknowledges that other courts in the District have emphasized that

solicitation of D.C. residents is an important factor in the "minimum contacts" analysis.  See,

e.g., Schwartz, 938 F. Supp. at 6; Reiman v. First Union Real Estate Equity and Mortg.

Investments, 614 F. Supp. 255, 258 (D.D.C. 1985); Mouzavires, 434 A.2d at 994, 996.  Yet no

decision of which the Court is aware has found personal jurisdiction here based solely on the fact

that a defendant initiated contract negotiations (and subsequently entered into a contract) with a

D.C. counterparty.  In each case, some additional factor was present that tipped the scales in favor of personal jurisdiction, most commonly that the work of the contract was to be performed in the District.  See, e.g., Schwartz, 938 F. Supp at 6; Mouzavires, 434 A.2d at 996.  The balance has been struck this way for good reason.  If a plaintiff could hale a defendant into court simply because he took the first step in establishing a contractual relationship between them, it would cut almost to the bone the principle that a contract with a forum resident alone is not enough to create personal jurisdiction over a defendant.  See Burger King Corp. v. Rudzewicz, 471 U.S. at 478; Willis, 655 F.2d at 1338; Hardy, 2013 WL 3488489, at *4; COMSAT Corp., 900 F. Supp. at 524.

The three cases Plaintiffs muster in support of their position all involve defendants whose contacts with the District exceeded mere solicitation of a business transaction with a D.C.-based entity.  See Armenian Genocide Museum and Memorial, Inc. v. Cafesjian Family Foundation, Inc., 607 F. Supp. 2d 185, 189 (D.D.C. 2009) ("[A]n attorney who represents a client in connection with the acquisition of real property in the District . . . can reasonably be expected to face a breach of fiduciary duty claim in the District.") (emphasis added); Schwartz, 938 F. Supp. at 6 ("Where a non-resident has solicited the business relationship and the contract calls for the performance of work within the District . . . the exercise of personal jurisdiction is permissible.") (emphasis added); Dorothy K. Winston & Co. v. Town Heights Dev., Inc., 376 F. Supp. 1214, 1216 (D.D.C. 1974) ("[A] complaint which alleges that a phone conversation acted as a ratification of an agent's contract made between two parties physically present in the District of Columbia is sufficient . . . to invoke the long-arm jurisdiction of this Court.") (emphasis added). There is also an older Supreme Court case, which Plaintiffs do not cite, suggesting that personal jurisdiction is appropriate if a defendant solicits a contract that has a "substantial connection"

with the forum state.  McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957).  But the

"connection" between the forum and the contract in McGee was far more substantial than the

one in this case, and, furthermore, the outcome in McGee was justified in part by the "special

status of insurance in state law," a factor not present here.  Vencedor Mfg. Co., Inc. v. Gougler

Industries, Inc., 557 F.2d 886, 890 (1st Cir. 1977) (citing Hanson v. Denckla, 357 U.S. 235, 252

(1958)); see also Trippe Mfg. Co. v. Spencer Gifts, Inc., 270 F.2d 821, 822 (7th Cir. 1959)

("Plaintiff cites McGee . . . .  However, we think the more recent case of Hanson v. Denckla . . .

demonstrates [that] the McGee case has been limited by the Court to the insurance field.").

Unlike these cases, Plaintiffs have pointed to no additional factor related to their

transaction with Defendants – no particular consequence in the District, no performance of work

in the District, no physical presence of Defendants in the District, no special interest of the

District in the case – that would justify the Court's exercise of jurisdiction in this instance.  The

fact that Singla resided here five years prior to TMI's contracting with WWT is irrelevant to the

specific-jurisdiction analysis, since Plaintiffs' claims against her do not arise out of the time she

spent in the District in 2004.  See Goodyear Dunlop, 131 S. Ct. at 2851; see also D.C. Code § 13-

423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief

arising from acts enumerated in this section may be asserted against him.").

A California-based business with no contacts with the District of Columbia other than

that it had offered to perform services in California for a D.C.-based business would not

reasonably expect to be sued here.  The Court therefore concludes that it does not have personal

jurisdiction over either TMI or Singla pursuant to the "transacting business" provision of D.C.

Code § 13-423(a)(1).

b.  Causing Tortious Injury

The "tortious injury" provisions of the D.C. long-arm statute permit the Court to exercise

jurisdiction over a non-resident defendant in two kinds of situations: first, if the defendant

"caus[ed] tortious injury in the District . . . by an act or omission in the District," or second, if he

"caus[ed] tortious injury in the District . . . by an act or omission outside the District . . . if he

regularly does or solicits business, engages in any other persistent course of conduct, or derives

substantial revenue from goods used or consumed, or services rendered, in the District."  D.C.

Code § 13-423(a)(3) & (4).  Plaintiffs allege that both grounds for jurisdiction are applicable to

this case.

The resolution of this issue, however, follows directly from the Court's finding that it did

not have personal jurisdiction under the "transacting business" prong of the long-arm statute.

Because, as the Court just explained, the exercise of personal jurisdiction over Defendants in this

forum under that prong would violate the Due Process Clause, and because Plaintiffs allege no

additional contacts relevant to the "tortious injury" prongs, then even if Plaintiffs could satisfy

the statutory requirements of either "tortious injury" provision, the Court would still not have

jurisdiction to hear their case.  This is because "[a] personal jurisdiction analysis requires that a

court determine whether jurisdiction over a party is proper under the applicable local long-arm

statute and whether it accords with the demands of due process."  See Ferrara, 54 F.3d at 828

(emphasis added).

Plaintiffs' additional invocation of the "conspiracy theory" of personal jurisdiction is

irrelevant – if no member of the alleged conspiracy has committed an act within the forum

sufficient to render her subject to personal jurisdiction, then the theory does not apply.  See FC

Inv. Group LC v. IFX Mkts., Ltd., 479 F. Supp. 2d 30, 41 (D.D.C. 2007) ("So long as any one

co-conspirator commits at least one overt act in the forum jurisdiction sufficient to establish

long-arm jurisdiction over that person and the act committed is in furtherance of the conspiracy,

there is personal jurisdiction over all members of the conspiracy.")  The Court, accordingly,

concludes that it does not have specific jurisdiction over Defendants pursuant to § 13-423(a)(3)

or § 13-423(a)(4).

> 2. *General Jurisdiction*

Unlike specific jurisdiction, general jurisdiction permits a court to "hear any and all

claims against" a defendant, even if they did not arise from his contacts with the forum.

Goodyear Dunlop, 131 S. Ct. at 2851.  The relevant statute here is D.C.'s general-jurisdiction

provision, § 13-334(a), which reads:

> In an action against a foreign corporation doing business in the
> District, process may be served on the agent of the corporation or
> person conducting its business, or, when he is absent and can  not
> be found, by leaving a copy at the principal place of business in the
> District, or, where there is no such place of business, by leaving a
> copy at the place of business or residence of the agent in the
> District, and that service is effectual to bring the corporation before
> the court.

 (Emphasis added); El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 675 (D.C. Cir. 1996)

(describing § 13-334(a) as D.C.'s "general jurisdiction" statute), abrogated on other grounds by

Samantar v. Yousuf, 560 U.S. 305 (2010).  The provision's reference to "doing business in the

District" has been interpreted as being equivalent to the Due Process Clause's independent

requirement that the defendant have continuous and systematic general business contacts with

the forum state in order to become subject to general jurisdiction there.  See Gorman v.

Ameritrade Holding Corp., 293 F.3d 506, 510 (D.C. Cir. 2002) (citing Hughes v. A.H. Robins

Co., 490 A.2d 1140, 1148 (D.C. 1985)); see also Helicopteros Nacionales de Colombia, S.A. v.

Hall, 466 U.S. 408, 416 (1984).

Since TMI's only contacts with the District are those alleged in connection with this dispute, and since those contacts were insufficient to support specific jurisdiction, see Section III.A.1, *supra*, it is clear that they also fall far short of the "continuous and systemic" contacts required for general jurisdiction.  Singla has one additional connection with the District – she lived here briefly in 2004 – but this cannot render her contacts the kind of "continuous and systematic" association necessary for general jurisdiction.  Helicopteros, 466 U.S. at 416.

Even if Plaintiffs could demonstrate that TMI and Singla had such contacts with the District, Plaintiffs still would not satisfy § 13-334(a) because they failed to serve process on Defendants in accordance with the statute.  Section 13-334(a) requires that a foreign defendant be served "in the District" in order to be subject to general jurisdiction.  "Where the basis for obtaining jurisdiction over a foreign corporation is § 13-334(a) . . . a plaintiff who serves the corporation by mail outside the District is 'foreclosed from benefitting from [the statute's] jurisdictional protection.'"  Gorman, 293 F.3d at 514 (quoting Everett v. Nissan Motor Corp. in U.S.A., 628 A.2d 106, 108 (D.C. 1993)); see also Gowens v. Dyncorp, 132 F. Supp. 2d 38, 42 (D.D.C. 2001).  Here, Plaintiffs served TMI and Singla by mail in California.  See ECF No. 4 at 9, 12, 19 (Service Documents); Reply at 5.  The Court, consequently, may not exercise general jurisdiction over Defendants via § 13-334(a).

B.   Transfer

Having found that it lacks personal jurisdiction over Defendants, the Court turns to Plaintiffs' request that, rather than dismiss the case, it transfer the matter via 28 U.S.C. § 1406(a) to a district court that does have such jurisdiction.  Defendants have opposed this request.

Section 1406(a) gives district courts the discretion to transfer rather than dismiss cases in which venue is improper if it would be in the interests of justice to do so.  See Janod, Inc. v.

13

Echo Entertainment, Inc., 890 F. Supp. 2d 13, 24 (D.D.C. 2012). Before transferring the case, however, the transferor court must ensure that there is personal jurisdiction and venue in the transferee court. See Sharp Elecs. Corp. v. Hayman Cash Register Co., 655 F.2d 1228, 1230 (D.C. Cir. 1981); see also 28 U.S.C. § 1406(a) (empowering courts to transfer cases "to any district[s] or division[s] in which [they] could have been brought").

Here, Plaintiffs have not identified any particular district court to which they would like the Court to transfer their case. Nor have they given any reason why transfer would be in the interests of justice, other than that Defendants previously elected to remove the case from state to federal court. Of course, the latter argument is a *non sequitur*, and without any explanation as to which transferee courts would have venue or personal jurisdiction, the Court lacks enough information to select an appropriate alternative forum. Cf. Janod, 890 F. Supp. 2d at 24. The Court therefore cannot find that transfer would be in the interests of justice and will deny this request.

Finally, the Court notes that granting TMI and Singla's Motion to Dismiss does not dispose of the entirety of this case. As previously noted, Plaintiffs named as Defendants not only TMI and Singla, but also individuals designated as Tanya Doe and John Doe. These latter two remain. Should Plaintiffs not perfect service on them within the time prescribed in the Rules, they, too, will be dismissed. In the event Plaintiffs decide to pursue this case in a more appropriate forum, they shall inform the Court so that the Does may be dismissed without prejudice and the matter terminated in this district.

**IV.      Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A

separate Order consistent with this Opinion will be issued this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 15, 2013