1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10
11   WORLDWIDE TRAVEL,                     Case No.  14-cv-00155-BAS(DHB)
     INCORPORATED, *et al*.,
12                                         **ORDER GRANTING IN PART
                              Plaintiffs,  AND DENYING IN PART
13                                         DEFENDANTS' MOTION TO
             v.                            DISMISS**
14
     TRAVELMATE US, INC., *et al*.,        (ECF No. 40)
15
                              Defendants.
16
17

18        On June 12, 2013, Plaintiffs World Wide Travel Incorporated dba Worldwide

19   Travel, Inc. ("WWT"), Laxmi Chand, and Usha Chand (collectively, "Plaintiffs")

20   commenced this action against Defendants Travelmate US, Inc. dba TMI, dba TMI

21   Web, dba TMI Web Services, dba Travelmate ("TMI") and Ritu Singla

22   (collectively, "Defendants") in Superior Court for the District of Columbia.

23   Defendants removed the case to the United States District Court for the District of

24   Columbia on September 4, 2013 on the basis of diversity jurisdiction.  The case was

25   transferred to the Southern District of California on January 7, 2014.

26        On March 11, 2014, Plaintiffs filed a First Amended Complaint ("FAC")

27   alleging (1) breach of contract, (2) fraud, (3) money had and received, (4)

28   conversion, (5) breach of the implied covenant of good faith and fair dealing, (6)

violation of California Business and Professions Code Section 17200, *et seq.* (the "UCL") and (7) accounting.  Defendants now move to dismiss Plaintiffs' causes of action for fraud, conversion, accounting, and the UCL pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART** with leave to amend and **DENIED IN PART**.

I.     **BACKGROUND**

Plaintiffs Laxmi Chand and Usha Chand are the shareholders and officers of plaintiff WWT, a corporation in the business of selling overseas travel arrangements.  (FAC at ¶ 1.)  In 2004, Plaintiffs sponsored defendant Ritu Singla to move from India to the United States in order to work for WWT.  (*Id.* at ¶ 9.)  In 2005, Ms. Singla left WWT and allegedly moved to Texas.  (*Id.* at ¶ 11.)

Plaintiffs allege that, while in Texas, Ms. Singla formed TMI, a business designed to sell the same type of overseas travel arrangements sold by Plaintiffs.  (*Id.* at ¶ 12.)  Plaintiffs further allege that Ms. Singla moved to California in 2009 and began to operate TMI in the City of San Diego.  (*Id.* at ¶¶ 2–3, 13.)  Plaintiffs also allege that Ms. Singla is TMI's sole officer, director, and shareholder.  (*Id.* at ¶ 6.)

Due to the increase in online travel arrangements, Plaintiffs began seeking assistance to advertise WWT's website on Google.  (FAC at ¶ 14.)  Plaintiffs allege that, in or about February 2009, TMI, through its agent, "Tanya," solicited Laxmi Chand to use TMI's advertising services on Google.  (*Id.* at ¶ 15, Ex. A.)  In February 2009, Laxmi Chand and WWT entered into a written contract ("Contract") with TMI for "guaranteed 'first page placement'" of Plaintiffs' website on Google.  (*Id.* at ¶ 15; Ex. A.)  Ms. Singla was not a party to the Contract.  Usha Chand was also not a party to the Contract.  The Contract authorized TMI to charge

its billings directly to Plaintiffs' American Express accounts.  (*Id*. at ¶ 16; Ex. A.)
Usha Chand was jointly liable with WWT for amounts charged to those accounts.
(*Id*. at ¶ 16.)

The Contract authorized charges of $3,225 for the period of February 2, 2009
to March 1, 2009, and then subsequent monthly charges "based on hits on keyword
phrases specified in . . . the Contract."  (*Id*.)  The parties allegedly orally modified
the Contract in June 2009, "by basing charges on a 'per click' basis, that is, the
number of times visitors 'clicked' on Plaintiffs' advertising appearing on Google."
(*Id*.)  Defendants allegedly made charges to Plaintiffs' credit card accounts from
May 2009 through December 2009, and from February 2010 through November
2010. (*Id*. at ¶ 17.)

Plaintiffs allege that, "[w]ithout Plaintiffs' knowledge or consent, in about
July 2010, Defendants returned to keyword rather than 'per click' invoicing[,]" and
that "[i]n 2010, Defendants inexplicably began invoicing Plaintiffs for greatly
increased amounts."  (*Id*. at 18, 19.)  In December 2010, Plaintiffs requested that
Defendants provide documentation to justify the "unusually large charges."  (*Id*. at
¶ 19.)  Defendants refused Plaintiffs' request, and Plaintiffs subsequently notified
them that no further charges were authorized to Plaintiffs' credit cards until the
documentation was provided.  (*Id*.)

In January 2011, Plaintiffs disputed Defendants' charges directly with
American Express, and Defendants opposed the dispute.  (*Id*. at ¶ 20.)  In apparent
response to the dispute, Defendants sent Plaintiffs "a few highly redacted Google
account records" on February 22, 2011.  (*Id*. at ¶ 21.)  Plaintiffs allege the records
"showed that Defendants had systematically lied to Plaintiffs about the number of
'clicks' and keyword hits realized, thus grossly overcharging Plaintiffs for services,
and charging for services never provided and results never obtained."  (*Id*.)
Specifically, Plaintiffs allege the records "showed that Defendants diverted
Plaintiffs' funds to their own Google advertising, billing Plaintiffs for Defendants'

own Google keywords and clicks, thereby doubling, tripling or even quadrupling the charges Defendants invoiced to Plaintiffs taken by direct credit card charging." (*Id.* at ¶ 23.)

Plaintiffs allege, for example, that Defendants' records for May 2010 show that Plaintiffs were charged for thirty-two keywords, when only five of those keywords appeared on Plaintiffs' price list, and only one of them was used; and that Plaintiffs were charged for seventeen keywords in September 2010, when only six of those keywords appeared on Plaintiffs' price list, and again only one of them was used. (*Id.* at ¶ 24.) Defendants charged Plaintiffs' American Express card $12,865 in May and $8,680 in September, when, according to Plaintiffs, only $400 was actually justified and authorized for each month. (*Id.*)

In April 2011, Plaintiffs hired a "Google advertising expert" to analyze Defendants' records. (*Id.* at ¶ 25.) According to Plaintiffs, the expert determined that "the number of 'clicks' reported by Defendants was unsubstantiated and impossible[,]" and that the web logs from Plaintiffs' web server showed a routing from Plaintiffs' website to websites in Texas and California, states in which Plaintiffs believe Defendants formerly or now reside. (*Id.* at ¶¶ 25, 26.) Plaintiffs allege that they have suffered damages in excess of $160,000. (*Id.* at ¶ 30; Prayer.)

Finally, Plaintiffs allege on information and belief that there exists a unity of interest and ownership between Ms. Singla and TMI such that Ms. Singla is the alter ego of TMI. (*Id.* at ¶ 7.) Ms. Singla is described as TMI's sole officer, director, and shareholder, and both TMI and Ms. Singla are described in the FAC as residing and doing business at 13565 Lavender Way, San Diego, California. (*Id.* at ¶¶ 2-3, 6.) Plaintiffs further allege that Ms. Singla used TMI to misappropriate Plaintiffs' advertising funds and then used those funds to advertise her own business, TMI. (*Id.* at ¶ 7.) Plaintiffs also allege that adherence to TMI's corporate existence would sanction fraud and promote injustice, as TMI is insolvent and unable to pay Plaintiffs' damages. (*Id.*)

1   In the FAC, Plaintiffs assert claims for (1) breach of contract; (2) fraud; (3)

2   money had and received; (4) conversion; (5) breach of the implied covenant of good

3   faith and fair dealing; and (6) violation of California Business and Professions Code

4   Section 17200, *et seq*.  (*Id*. at ¶¶ 27-52, 57-61.)  Plaintiffs also seek declaratory

5   relief for accounting.  (*Id*. at ¶¶ 53-56.)  Defendants now move to dismiss the FAC

6   in its entirety under Rule 12(b)(6).  Plaintiffs oppose.

7   **II.     STATEMENT OF LAW**

8   A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

9   Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R.

10  Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court

11  must accept all allegations of material fact pleaded in the complaint as true and

12  must construe them and draw all reasonable inferences from them in favor of the

13  nonmoving party.  *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir.

14  1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed

15  factual allegations, rather, it must plead "enough facts to state a claim to relief that

16  is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

17  claim has facial plausibility when the plaintiff pleads factual content that allows the

18  court to draw the reasonable inference that the defendant is liable for the

19  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

20  550 U.S. at 556).  "Where a complaint pleads facts that are merely consistent with a

21  defendant's liability, it stops short of the line between possibility and plausibility of

22  entitlement to relief."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal

23  quotations omitted).

24  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

25  relief' requires more than labels and conclusions, and a formulaic recitation of the

26  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting

27  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)).  A court need

28  not accept "legal conclusions" as true.  *Iqbal*, 556 U.S. at 678.  Despite the

deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002)). "However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc.*, 896 F.2d at 1555, n. 19. Documents specifically identified in the complaint whose authenticity is not questioned by the parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statute on other grounds); *see also Branch*, 14 F.3d at 453-54. Such documents may be considered, so long as they are referenced in the complaint, even if they are not physically attached to the pleading. *Branch*, 14 F.3d at 453-54; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (rule extends to documents upon which the plaintiff's complaint "necessarily relies" but which are not explicitly incorporated in the complaint). Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Fecht*, 70 F.3d at 1080 n. 1. Additionally, the court may consider materials which are judicially noticeable. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber*

– 6 –

1   *Distrib. Co.,* 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th

2   Cir. 1962)).

3   **III.     DISCUSSION**

4        **A.     Standing**

5        Defendants argue that Plaintiff Usha Chand lacks standing to pursue any of

6   the claims asserted in the FAC, and, therefore, must be dismissed from this action.

7   (Mot. at pp. 6-7.)  In order to satisfy Article III standing,

8        a plaintiff must show (1) [s]he has suffered an "injury in fact" that is
    concrete and particularized and actual or imminent, not conjectural

9        or hypothetical; (2) the injury is fairly traceable to the challenged

10        action of the defendant; and (3) it is likely, as opposed to merely
    speculative, that the injury will be redressed by a favorable decision.

11

12   *Braunstein v. Ariz. Dept. of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (citing

13   *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 868-69 (9th Cir. 2002)). "At the pleading

14   stage, general factual allegations of injury resulting from the defendant's conduct

15   may suffice, for on a motion to dismiss we presum[e] that general allegations

16   embrace those specific facts that are necessary to support the claim." *Maya v.*

17   *Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan v. Defenders of*

18   *Wildlife*, 504 U.S. 555, 561 (1992) (alteration in original) (internal quotations

19   omitted)).

20        "[A] shareholder must assert more than personal economic injury resulting

21   from a wrong to the corporation" to have standing to maintain an individual action.

22   *Shell Petroleum N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983); *see e.g.*, *Von*

23   *Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) (shareholder lacks

24   standing to sue on the basis he suffered monetary loss when defendants caused the

25   corporation to lose income and the value of his stock to decline).  Rather, "[a]

26   shareholder must be injured directly and independently of the corporation." *Id.*; *see*

27   *also Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530 (1946) ("[A] stockholder

28   may sue as an individual where he is directly and individually injured although the

corporation may also have a cause of action for the same wrong.").  The Supreme Court of California expressed this rule as follows:

> Generally, a (shareholder) may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity.  Under proper circumstances a shareholder may bring a representative action or derivative action on behalf of the corporation.

*Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) (citing *Sutter*, 28 Cal. 2d at 530).  The rule "is a salutary one which avoids multitudinous litigation and recognizes the corporate entity." *Id.*  "[I]t is the gravamen of the wrong alleged in the pleadings, not simply the resulting injury, which determines whether an individual action lies." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 124 (1999).

Here, Defendants argue Usha Chand has no standing to pursue any claims in the FAC because she is not identified as an individual party on the Contract and Plaintiffs have failed to allege that she ever "personally paid the charges assessed on the American Express accounts."  (Mot. at p. 7.)  In response, Plaintiffs argue the allegations stating Usha Chand "was required to be jointly liable with [WWT] for amounts charged" on the American Express card accounts, and charges were in fact made on the accounts, are sufficient to allege standing.  (Opp. at p. 3.)

Construing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to sufficiently allege Usha Chand has standing to pursue this action.  The gravamen of the wrong alleged in the pleadings is that Defendants breached a contract entered into between TMI, Laxmi Chand, and WWT by charging WWT a substantial amount of money under the contract for services not rendered to the corporation, and disguised that breach through fraudulent misrepresentations and the creation of fictitious reports.  Thus, the gravamen of the alleged wrong is injury to the corporation.

The Court acknowledges the rule "is susceptible to an exception when the

– 8 –

injury is to the plaintiff individually, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly." *Id.* (internal quotations omitted) (citing *Sutter*, 28 Cal.2d at 530). However, Usha Chand is not a party to the Contract, and the allegation that Usha Chand was jointly liable on the charged American Express account listed in the Contract is not, without more, sufficient to allege standing. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F. 2d 635, 641 (9th Cir. 1988) (holding that the plaintiff-shareholders did not have standing on the basis they were guarantors on the corporation's bonds); *Sherman v. British Leyland Motors, Ltd.*, 601 F. 2d 429, 439-40 & n. 10 (9th Cir. 1979) (finding the plaintiff-shareholder did not have standing to sue in his individual capacity, even when he, as the guarantor of certain corporate obligations to third parties, was required to repay loans on behalf of the corporation).

Accordingly, Defendants' motion to dismiss Usha Chand for lack of standing is **GRANTED** with leave to amend.

## B. Alter Ego[1]

Defendants move to dismiss the FAC against Ms. Singla, arguing the FAC fails to state sufficient facts supporting the theory that Ms. Singla is the alter ego of TMI. (Mot. at pp. 7-9.) "Alter-ego liability allows a plaintiff to 'pierce the corporate veil' and hold a corporate actor . . . liable for the conduct of the corporation." *Pacific Maritime Freight, Inc. v. Foster*, No. 10-cv-0578, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (citing *Stark v. Coker*, 20 Cal.2d 839, 845 (1942)); *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citing *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545-46 (9th Cir. 1985))

---

[1]   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, and thus it applies California's substantive law and federal procedural law. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 460, 427 (1996)).

("The equitable alter ego doctrine governs whether two separate entities may be treated as the same entity.")  The doctrine applies where "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone."  *RRX Indus.*, 772 F.2d at 545; *see also Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).

"In assessing alter ego, courts consider the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers."  *Sandoval*, 34 F. Supp. at 1040.  No single factor is determinative; instead a court must examine all the circumstances to determine whether to apply the doctrine.  *Virtualmagic Asia, INc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2003).  Common ownership alone, however, is insufficient to disregard the corporate form.  *Sandoval*, 34 F. Supp. at 1040.

"Conclusory allegations of 'alter ego' status are insufficient to state a claim."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).  "Rather, a plaintiff must allege specifically both the elements of alter ego liability, as well as facts supporting each."  *Id.*

### 1.   Unity of Interest

Defendants argue that Plaintiffs' allegations regarding Ms. Singla's connection to TMI are "baseless assumptions."  (Mot. at pp. 7-9.)  Defendants also argue that Plaintiffs' alter ego allegations are a mere conclusory recitation of the factors courts use to analyze alter ego.  (*Id.*)

Courts have held that the pleading of at least two factors in support of a unity of interest satisfies this element.  *Daewoo Elecs. Am., Inc. v. Opta Corp.*, No. C 13-

1247, 2013 WL 3877596, at *5 (N.D. Cal. July 25, 2013); *Pacific Mar. Freight, Inc.*, 2010 WL 3339432, at *6.   Here, Plaintiffs allege at least two of the factors showing that unity of interest exists between Ms. Singla and TMI.  Plaintiffs allege in the FAC that Ms. Singla is TMI's sole officer, director, and shareholder, and that Ms. Singla and TMI both reside and do business in the same location.  (FAC at ¶¶ 2-3, 6.)  Plaintiffs further allege Ms. Singla "dominated, influenced and controlled the affairs" of TMI as well as the business, property, and affairs of TMI.  (FAC at ¶7.)  Plaintiffs also allege, among other things, that TMI was a "mere shell and naked framework[]" which Ms. Singla used "as a device and conduit for the conduct of [her] individual and personal business, property and affairs."  (FAC at ¶ 7.)  In addition, Plaintiffs allege Ms. Singla diverted assets from TMI to the detriment of creditors, and commingled funds and assets with her own.  (*Id.*)  Thus, the Court finds Plaintiffs' "unity of interest" allegations are sufficient.  *See Daewoo Elecs. Am., Inc.*, 2013 WL 3877596, at *5; *Lacey v. Malandro Commc'n*, No. CV-09-01429, 2009 WL 4755399, at *6 (D. Ariz. Dec. 8, 2009); *Fund Raising, Inc. v. Alaskans for Clean Water, Inc.*, No. CV 09-4106, 2009 WL 3672518, at *4 (C.D. Cal. Oct. 29, 2009).

## 2.   **Inequitable Result**

"Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability."  *Pac. Mar. Freight, Inc.*, 2010 WL 3339432, at *7 (citing *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1359 (1988)).   An inequitable result may also follow "if the complained of acts are treated as those of an undercapitalized corporation;" however, allegations that a plaintiff would face difficulty collecting a judgment from a corporation are insufficient.  *RRX Indus.*, 772 F.2d at 546 (citing *Automotriz Del Golfo De Cal. S.A. De C.V. v. Resnick*, 47 Cal.2d 792, 797 (1957)); *Sandoval*, 34 F. Supp. at 1041; *Neilson*, 290 F. Supp. 2d at 1117-18.

In general, California courts "require evidence of some bad-faith conduct to fulfill the second prong of alter-ego liability, [and] that bad faith must make it inequitable to recognize the corporate form." *Daewoo*, 2013 WL 3877596, at *5 (quoting *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1192 (E.D. Cal. 2009) (alteration in original)); *but see RRX Indus.*, 772 F.2d at 546 ("A finding of bad faith, however, is not prerequisite to the application of the alter ego doctrine under California law."). A party alleging bad faith conduct must state how the corporate form was abused to perpetrate it. *Pac. Mar. Freight, Inc.*, 2010 WL 3339432, at *8.

Here, Plaintiffs allege that Ms. Singla failed to adequately capitalize TMI, a company she formed, and diverted assets from the company. (FAC at ¶¶ 7, 13.) Plaintiffs further allege TMI was created and continued, "pursuant to a fraudulent scheme, plan and device whereby [its] income, revenue and profits were diverted to [Ms. Singla], whereby [TMI was] fraudulently used by [Ms. Singla] and obligors for the assumption of obligations and liabilities, . . . which obligations were incapable of performance by TMI." (*Id.*) Plaintiffs also allege Ms. Singla "misappropriated Plaintiffs' advertising funds to instead pay for advertising for her business, done in the name of TMI and Travelmate—a travel agency directly competing with the business of Plaintiffs." (*Id.*) Lastly, Plaintiffs allege that Defendants produced Google records showing Plaintiffs were overcharged and that their funds were diverted to Defendants' own Google advertising. (FAC at ¶¶ 19, 23-24)

Unlike the plaintiffs in the cases cited by Defendants, Plaintiffs here go beyond mere conclusory allegations. (Mot. at pp. 8-9.) Assuming the facts are true, the Court finds the allegations in the FAC sufficient to raise the facial plausibility an inequitable result will follow if the acts are treated as those of the corporation alone. *See Lacey*, 2009 WL 4755399, at *6. Moreover, "a complaint is sufficient if it gives the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Laguna v. Coverall N. Am., Inc.*, No. 09cv2131, 2009 WL

5125606, at *3 (S.D. Cal. Dec. 18, 2009) (citing *Twombly*, 550 U.S. at 515-16)). The Court finds that Plaintiffs' allegations in the FAC sufficiently identify the contours of an alter ego claim such that Defendants are able to prepare a response and conduct discovery. *Id.* at *3. Accordingly, the Court finds that dismissal of Ms. Singla is not appropriate at this time.

### C.   Failure to State a Claim

#### 1.   <u>Fraud</u>

Defendants argue that Plaintiffs have failed to adequately plead facts sufficient to meet the heightened pleading requirements for fraud. (Mot. at pp. 10-13.) To state a claim for fraud in California, a plaintiff must allege "[1] a false representation, [2] knowledge of its falsity, [3] intent to defraud, [4] justifiable reliance, and [5] damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)) (internal quotations omitted). Under Federal Rule of Civil Procedure Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Vess*, 317 F.3d at 1103 ("Rule 9(b)'s particularity requirement applies to state-law causes of action."). The heightened particularity standard requires allegations of fraud to include the "who, what, when, where, and how" of the alleged misconduct, so as to be specific enough to give defendants notice "so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (citations omitted).

However, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th

Cir. 1989)).  But, a plaintiff who alleges fraud based "on information and belief must state the factual basis for the belief."  *Id.*

Plaintiffs allege that Defendants made the following misrepresentations to Plaintiffs: (1) "Plaintiffs were being billed on a keyword basis, and only on keywords actually approved by Plaintiffs and utilized in the campaigns"; and (2) "Defendants' representation of the number of 'clicks' and keywords invoiced to Plaintiffs was true and accurate[.]"  (FAC at ¶ 33.)  Plaintiffs further allege that these misrepresentations were made by Defendants and TMI's agent, "Tanya," who is identified on the Contract as a TMI salesperson, during the period from February 2009 to February 2011.  (*Id.*)  The Court finds that these allegations satisfy the "who, what, when, where, and how" of the matter, and are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge[.]"  *Vess*, 317 F.3d at 1106 (quoting *Bly–Magee v. Cal.*, 236 F.3d at 1019).

Plaintiffs further allege that Defendants knew and intended to defraud Plaintiffs "to allow Defendants to charge monthly invoiced amounts directly to Plaintiffs' credit cards, while Defendants used such funds to fund their own Google advertising campaigns in direct competition with Plaintiffs' business."  (FAC at ¶ 34.)  In support of these allegations, Plaintiffs allege Defendants "created and gave to Plaintiffs fictitious reports and statistics to justify overbilling Plaintiffs for services purportedly rendered, and billing Plaintiffs for services never performed or results never obtained."  (*Id.* at ¶ 33.)  Plaintiffs further allege that the Google records they received for the May 2010 and September 2010 Google advertising campaigns reflect Plaintiffs were being charged for keywords they did not approve and were not utilized.  (*Id.* at ¶ 24.)[2]  Plaintiffs further allege the Google records

_____

[2]   Defendants contend Plaintiffs' misrepresentations are vague and ambiguous because the contract allegedly changed over the course of the nearly two year business relationship.  (Mot. at pp. 11-12.)  However, Plaintiffs allege that the

– 14 –

1    show that "Defendants diverted Plaintiffs' funds to their own Google advertising,

2    billing Plaintiffs for Defendants' own Google keywords and clicks." (*Id.* at ¶ 23.)

3    Plaintiffs also contend Ms. Singla was a travel agent at the time specializing in

4    travel to Central Asia and Africa and operated a business that directly competed

5    with WWT. (*Id.* at ¶¶ 1, 13, 22, 34.) Lastly, Plaintiffs allege justifiable reliance,

6    alleging a prior relationship and noting the "complex nature of Google advertising

7    and accounting," and damages which are "believed to exceed $160,000." (*Id.* at ¶¶

8    9-10, 35-37.) Based on these allegations, the Court finds that Plaintiffs have

9    sufficiently identified the circumstances surrounding the alleged fraud so that

10   Defendants can prepare an adequate answer. *See Moore*, 885 F.2d at 540; *Vess*, 317

11   F.3d at 1106.

12       Given the foregoing, the Court finds Plaintiffs' allegations in the FAC are

13   sufficient to state a claim for fraud and further meet Rule 9(b)'s heightened

14   pleading standard. The alleged fraud is alleged with enough particularity such that

15   Defendants can defend against the charge. Defendants' motion to dismiss Plaintiffs

16   cause of action for fraud is therefore **DENIED**.[3]

17              **2.    Conversion**

18       Defendants argue that Plaintiffs' conversion claim must be dismissed because

19   it is based on a mere overcharge. (Mot. at pp. 13-14.) In California, "[t]he

21   Contract was orally modified "[i]n about June 2009," to reflect an agreed upon
22   change to the method of billing. (FAC at ¶ 16.) Initially, charges were to be based
23   on hits on approved keyword phrases; after June 2009, they were to be based on a
     "per click" basis. (*Id.*) Defendants further allege that "[w]ithout Plaintiffs'
24   knowledge or consent, in about July 2010, Defendants returned to keyword rather
     than 'per click' invoicing." (*Id.* at ¶ 18.) These allegations are date specific enough
25   to allow Defendants to defend against Plaintiffs' allegation of fraud.

26       [3]    Because Plaintiffs state a cause of action for fraud, the Court also
     declines to dismiss Plaintiffs' prayer for punitive damages. *See* Cal. Civ. Code §
27   3294(a); *TJRK, Inc. v. Waage*, No. 08cv1140, 2008 WL 4748179, at *3 (S.D. Cal.
28   2008).

elements of conversion are (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (citing *Burlesci v. Petersen*, 80 Cal. App. 4th 1062, 1065 (1998)). A conversion claim for money is not stated "unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011) (citing *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006)). "There is no requirement that the [specific sum of] money have been held in trust—only that it be misappropriated." *Welco Elec.'s, Inc. v. Mora*, 223 Cal. App. 4th 202, 216 (2014). A failure to pay money owed or claims arising out of an alleged simple overcharge cannot be the basis for a conversion claim. *Id*. at 214 (citing *Kim*, 201 Cal. App. 4th at 284; *McKell*, 142 Cal. App. 4th at 1467).

Plaintiffs rely on *Welco* to support their claim of conversion. In *Welco*, the defendant worked for the plaintiff company, and without the plaintiff's knowledge or consent, used plaintiff's credit card to pay for defendant's services. *Id*. at 205-07. The defendant transferred over $370,000 into a bank account set up with a fictitious name using the plaintiff's credit card. *Id*. at 205. The defendant leased a swiping machine credit card terminal, which was used to make the transactions. *Id*. at 206. After discussing the evolution of the tort of conversion, the court held that, along with credit card information, a credit card balance is an intangible property right that can be converted. *Id*. at 211-16. The court explained:

> Plaintiff had a property right in its credit card account because plaintiffs interest was specific, control over its credit card account, and an exclusive claim to the balance. [] Defendant obtained the money from the credit card company. As a result, plaintiff became indebted to the credit card company. Thus, when defendant . . . for defendants benefit, misappropriated plaintiffs credit card and used it, part of plaintiffs credit balance with the credit card company was

> taken by defendant and what resulted was an unauthorized transfer to
> defendant of plaintiffs property rights—i.e., in money from the
> available credit line belonging to plaintiff with the credit card
> company.

*Id*. at 211.

In so holding, the *Welco* court distinguished case law finding that conversion claims fail if based on an overcharge because in those cases there was no taking of intangible property.   *Id*. at 214.   In addressing the defendant's argument that allowing the conversion claim to proceed would invite a conversion claim over any credit card dispute, the *Welco* court stated that

> [a] person's willing use of a credit card to pay for goods or services
> has no relationship to what occurred here.  Plaintiff did not consent
> to its credit card or its information being used by or on behalf of
> defendant. This case does not . . . concern a simple overcharge,
> which [] does not constitute a conversion.

*Id*. at 215 (citing *McKell*, 142 Cal. App. 4th at 1467).  Thus, the court distinguished between a situation where a defendant's action was akin to theft, and situations involving a dispute over a bill, *e.g.*, disputes arising regarding the quality of goods purchased, fault concerning medical treatment, or the appropriateness of legal bills. *Id*.  In determining that what occurred in *Welco* was theft, the *Welco* court placed significance on the fact that the defendant used the plaintiff's credit card without consent.

Here, Plaintiffs consented to Defendants' use of their credit card.  Plaintiffs authorized Defendants to make monthly charges as payment for Defendants' advertising services.  (FAC at ¶ 16, Ex. A.)  The parties now dispute the amount and appropriateness of the charges.  (*See id*. at ¶ 24.)  Given the presence of consent, the Court finds the present dispute is more akin to a dispute over a bill than it is to outright theft.  Accordingly, Defendants' motion to dismiss Plaintiffs' cause of action for conversion is **GRANTED** with leave to amend.

///

### 3.   Business and Professions Code Section 17200, *et seq.*

Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. "[T]he UCL's coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)) (internal quotations omitted). There are three substantive prongs of the UCL: acts or business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *Id.* Under the UCL, a person has standing if that person "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

In the FAC's seventh cause of action, Plaintiffs reincorporate every allegation in the FAC and generally state that "Defendants' acts constituted unlawful, unfair and fraudulent business acts or practices and directly harmed and damaged Plaintiffs." (FAC at ¶ 59.) The Court addresses each prong in turn.

### a.   *"Unlawful" Acts or Practices*

"Section 17200's unlawful prong borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012) (quoting *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999)) (internal quotations omitted). Violations of almost any law, federal or state, may serve as a sufficient predicate for a claim under the UCL's "unlawful" prong. *Id.* However, violations of the common law (e.g., breach of contract, common law fraud) are insufficient to satisfy the unlawful prong. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074-75 (C.D. Cal. 2003). Accordingly, Plaintiffs have failed to state a claim under the unlawful prong of the UCL.

///

**b.    *"Fraudulent" Acts or Practices***

"A fraudulent business practice [under the UCL] is one which is likely to deceive the public." *McKell*, 142 Cal. App. 4th at 1471 (citing *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1290 (2002)).  "The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." *Id.* (citing *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003)).  The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to UCL "fraud" claims brought in federal court.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F. 3d 1097, 1102-05 (9th Cir. 2003)).

As the Court has determined Plaintiffs have sufficiently alleged a cause of action for common law fraud, the Court finds Plaintiffs have adequately pleaded a section 17200 claim under the fraudulent prong.  *See Boschma v. Home Loan Center*, 198 Cal. App. 4th 230, 253 (2011); *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105-07 (1996), abrogated on other grounds by *Cel–Tech Commc'ns, Inc.*, 20 Cal. 4th at 185.

**c.    *"Unfair" Acts or Practices***

The definition of an "unfair" business practice depends on whether the plaintiff is a competitor or consumer.  A claim of unfairness to competitors must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel–Tech Commc'ns, Inc.*, 20 Cal. 4th at 186-87.  Therefore, when the plaintiff is a direct competitor of the defendant and invokes Section 17200's "unfair" prong, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.

California courts are split on how to define "unfair" practices in consumer actions.  *See Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1273-74

(2006) (discussing the split between California Courts of Appeal); *Yanting Zhang v. Super. Ct.*, 57 Cal. 4th 364, 380 n. 9 (2013) (acknowledging "[t]he standard for determining what business acts or practices are 'unfair' in consumer actions under the UCL is currently unsettled").   Some courts apply the *Cel-Tech* standard to consumer actions.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239-40 (2007).   Other courts apply a balancing test in which the utility of the defendants' practices is weighed against the practices' impact on the plaintiff. *McKell*, 142 Cal. App. 4th at 1473.   Finally, some courts apply a three-pronged test contained in the Federal Trade Commission Act, under which a business practice is "unfair" if (1) the consumer's injury is substantial; (2) the injury is not outweighed by any countervailing benefits of the practice to consumers or competition; and (3) the injury is such that consumers could not have reasonably avoided it.  *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 1394, 1403-06 (2006).

In *Lozano v. AT & T Wireless Serv., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007), the Ninth Circuit endorsed the tethering test or the balancing test and declined "to apply the FTC standard in the absence of a clear holding from the California Supreme Court."  *See also Ferrington v. McAfee, Inc.*, No. 10-cv-01455, 2010 WL 3910169, at *12 (N.D. Cal. Oct. 5, 2010) ("Pending resolution of this issue by the California Supreme Court, the Ninth Circuit has approved the use of either the balancing or the tethering tests in consumer actions, but has rejected the FTC test.") (citation omitted); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F.Supp.2d 989, 1010-11 (N.D. Cal. 2012) (applying the tethering test).

There is disagreement between the parties as to whether Plaintiffs are "competitors" of TMI or whether they are "consumers."   Defendants argue that Plaintiffs have failed to plead facts sufficient to support the contention that TMI is Plaintiffs' competitor, and also appear to take the stance that Plaintiffs are not consumers.  (Mot. at pp. 16-17; Reply at p. 11.)  Arguably, Plaintiffs fall under both categories.  Plaintiffs allege that TMI and WWT are direct competitors and "instead

– 20 –

of promoting Plaintiffs' business on Google, Defendants instead used Plaintiffs' payments to fund Defendants' own Google advertising campaigns." (FAC at ¶¶ 12, 26, 29, 34; Opp. at pp. 8-9.) Plaintiffs also allege they are consumers, in that Plaintiffs sought a service, and TMI agreed to provide that service in exchange for payment. (FAC at ¶¶ 15-16.)

To the extent Plaintiffs are pursuing their UCL claim under the unfair prong on the basis the parties are direct competitors, the Court finds that Plaintiffs have failed to sufficiently allege a cause of action, as Plaintiffs have not alleged that Defendants violated any legislatively declared policy, violated antitrust principles, or significantly threatened or harmed the competition. Plaintiffs' claim on the basis they are consumers fails on the same grounds if the Court applies the *Cel-Tech* test.

Under the balancing test, however, the question is whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the court must "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (citations omitted); *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).

Here, Plaintiffs allege Defendants "systematically lied to Plaintiffs about the number of 'clicks' and keyword hits realized, thus grossly overcharging Plaintiffs for services, and charging for services never provided and results never obtained." (FAC at ¶ 21.) Plaintiffs further allege that Defendants switched from "per click" invoicing to keyword invoicing without Plaintiffs' knowledge or consent, and then began to invoice Plaintiffs for a large number of keywords that did not appear on Plaintiffs' original price list, and clicks that never occurred. (*See id.* at ¶¶ 18, 21, 23-25.) Plaintiffs also allege "[t]he redacted Google account records showed that Defendants diverted Plaintiffs' funds to their own Google advertising, billing Plaintiffs for Defendants' own Google keywords and clicks, thereby doubling,

tripling or even quadrupling the charges Defendants invoiced to Plaintiffs taken by direct credit card charging."  (*Id*. at ¶ 23.)  Plaintiffs further allege they have been damaged in an amount exceeding $160,000.  At this stage, these allegations are sufficient to state a claim that Plaintiffs have been harmed and Defendants' business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[4]  Thus, the Court finds Plaintiffs have sufficiently stated a claim under the UCL's unfair prong.

For the reasons discussed above, Defendants' motion to dismiss Plaintiffs' cause of action under Section 17200, *et seq*. is **GRANTED IN PART**, that is, to the extent Plaintiffs have alleged Defendants' acts constituted unlawful practices, with leave to amend, and **DENIED IN PART** to the extent Plaintiffs have alleged Defendants' acts constituted fraudulent or unfair practices.

### 4.   Declaratory Relief for Accounting

In the FAC, Plaintiffs seek declaratory relief for accounting.  (FAC at ¶¶ 53-56.)  Defendants move to dismiss arguing that declaratory relief operates only prospectively, and thus Plaintiffs' claim is improper because it seeks to redress past wrongs.  (Mot. at p. 14.)  In their opposition, Plaintiffs argue that a cause of action for "declaratory relief for accounting" is appropriate under California Code of Civil Procedure section 1060.  (Opp. at p. 6.)  However, regardless of the use of the phrase "declaratory relief" in the title of the cause of action in the FAC, Plaintiffs clearly seek an accounting.  In the FAC, they do not request a declaration of their rights or duties under the Contract.  *See* Cal. Civ. Proc. Code § 1060; *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 909 (2013); FAC at ¶¶ 53-56 & Prayer).  Rather, they seek an accounting because "[t]he precise sum due . . . cannot

---

[4]   "[T]he determination [of] whether [a practice] is unfair is one of fact which requires a review of the evidence from both parties[,]" and is therefore a determination that cannot typically be made on a motion to dismiss.  *See McKell*, 49 Cal. App. 4th at 240.

be ascertained without an accounting."  (FAC at ¶ 55).

"An accounting action 'is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due, administer full relief and render complete justice.'" *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1119-20 (E.D. Cal. 2014) (quoting *Verdier v. Super. Ct. in & for City & Cnty. of San Francisco*, 88 Cal. App. 2d 527, 531 (1948)).  "An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."  *Id.* at 1120 (citing *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977)).  "An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain."  *Id.*   A right to an accounting is derivative and must be based on other claims.  *Id.* (citing *Janis v. Cal. St. Lottery Comm'n*, 68 Cal. App. 4th 824, 833-34 (1998)).

"An accounting claim need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff."  *Flores*, 997 F. Supp. 2d at 1120 (internal citations and quotations omitted).   An action for accounting is appropriate where there is a fiduciary relationship or where "the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."  *Civic. W. Corp.*, 66 Cal. App. 3d at 14; *Glue-Ford, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023 n. 3 (2000); *Jolley*, 213 Cal. App. 4th at 910.

Here, there is no suggestion the parties are fiduciaries; they are simply two parties to a contract.   A mere contract or debt does not create a fiduciary relationship.  *Id.* at 33-34 (citing *Waverly Prods., Inc. v. RKO Gen., Inc.*, 217 Cal. App. 2d 721, (1963)).   Plaintiffs do allege the "complex nature of Google advertising and accounting" and assert that "[t]he precise sum due from cannot be ascertained without an accounting of the true and complete documentation

1   regarding the purported billing basis including but not limited to invoices, reports,
2   statistics substantiating the sums charged to Plaintiffs."   (FAC at ¶¶ 36, 55.)
3   However, a "suit for an accounting will not lie where it appears from the complaint
4   that none is necessary or that there is an adequate remedy at law."  *Flores*, 997 F.
5   Supp. 2d at 1120.   Here, there is nothing to suggest that the accounting is so
6   complicated that Plaintiffs cannot ascertain the true sum owed through discovery in
7   this action.  *See Cnty of Santa Clara v. Astra USA, Inc*., No. C- 05-03740, 2006 WL
8   2193343, at *6 (N.D. Cal. July 28, 2006).   Accordingly, the Court finds that
9   Plaintiffs have failed to allege a cause of action for accounting and Defendants'
10  motion to dismiss Plaintiffs' cause of action for accounting is **GRANTED** with
11  leave to amend.

## IV.   CONCLUSION

12       For the foregoing reasons, Defendants' motion to dismiss the FAC is
13  **GRANTED IN PART** with leave to amend and **DENIED IN PART** (ECF No.
14  40).  If Plaintiffs choose to file a Second Amended Complaint, they must do so no
15  later than March 30, 2015.

16       **IT IS SO ORDERED.**

17

18

19  **DATED:  March 9, 2015**

20                                             Hon. Cynthia Bashant
                                               United States District Judge
21

22

23

24

25

26

27

28