UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE TRAVEL, INCORPORATED, *et al*.,<br><br>                      Plaintiffs,<br><br>   v.<br><br>TRAVELMATE US, INC., *et al*.,<br><br>                      Defendants. | Case No. 14-cv-00155-BAS(DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 49) |

On June 12, 2013, Plaintiffs World Wide Travel Incorporated dba Worldwide Travel, Inc. ("WWT"), Laxmi Chand, and Usha Chand (collectively, "Plaintiffs") commenced this action against Defendants Travelmate US, Inc. dba TMI, dba TMI Web, dba TMI Web Services, dba Travelmate ("TMI") and Ritu Singla (collectively, "Defendants") in Superior Court for the District of Columbia. Defendants removed the case to the United States District Court for the District of Columbia on September 4, 2013 on the basis of diversity jurisdiction. (ECF No. 1.) The case was transferred to the Southern District of California in January 2014. (ECF Nos. 16, 17.)

On March 11, 2014, Plaintiffs filed a First Amended Complaint ("FAC") alleging (1) breach of contract, (2) fraud, (3) money had and received, (4) conversion, (5) breach of the implied covenant of good faith and fair dealing, (6) violation of

California's Unfair Competition Law ("UCL"), Business and Professions Code Section 17200, *et seq.*, and (7) accounting. (ECF No. 39.) Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 40.) The Court granted in part and denied in part Defendants' motion to dismiss with leave to amend. (ECF No. 47.)

On March 30, 2016, Plaintiffs filed a Second Amended Complaint ("SAC") alleging (1) breach of contract, (2) fraud, (3) money had and received, (4) conversion by theft, (5) breach of implied covenant of good faith and fair dealing, and (6) violation of the UCL. (ECF No. 48.) Presently before the Court is a motion to dismiss the SAC. (ECF No. 49.) Plaintiffs oppose. (ECF No. 52.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below, Defendants' motion to dismiss (ECF No. 49) is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Repeated Allegations

The following allegations, which were set forth in the FAC, were re-alleged in the SAC. Plaintiffs Laxmi Chand and Usha Chand are the shareholders and officers of plaintiff WWT, a corporation in the business of selling overseas travel arrangements. (SAC at ¶ 1.) In 2004, Plaintiffs sponsored defendant Ritu Singla to move from India to the United States in order to work for WWT. (*Id.* at ¶ 9.) In 2005, Ms. Singla left WWT and allegedly moved to Texas. (*Id.* at ¶ 11.)

Plaintiffs allege that, while in Texas, Ms. Singla formed TMI, a business designed to sell the same type of overseas travel arrangements sold by Plaintiffs. (*Id.* at ¶ 12.) Plaintiffs further allege that Ms. Singla moved to California in 2009 and began to operate TMI in the City of San Diego. (*Id.* at ¶¶ 2–3, 13.) Plaintiffs also allege that Ms. Singla is TMI's sole officer, director, and shareholder. (*Id.* at ¶ 6.)

Due to the increase in online travel arrangements, Plaintiffs began seeking

assistance to advertise WWT's website on Google. (*Id.* at ¶ 14.) Plaintiffs allege that, in or about February 2009, TMI, through its agent, "Tanya," solicited Laxmi Chand to use TMI's advertising services on Google. (*Id.* at ¶ 15, Exh. 1.) In February 2009, Laxmi Chand and WWT entered into a written contract ("Contract") with TMI for "guaranteed 'first page placement'" of Plaintiffs' website on Google. (*Id.*) Ms. Singla was not a party to the Contract. (*See id.* at Exh. 1.) Usha Chand was also not a party to the Contract. (*See id.*) The Contract authorized TMI to charge its billings directly to Plaintiffs' American Express accounts. (*Id.* at ¶ 16, Exh. 1.) Usha Chand was jointly liable with WWT for amounts charged to those accounts. (*Id.* at ¶ 16.)

The Contract authorized charges of $3,225 for the period of February 2, 2009 to March 1, 2009, and then subsequent monthly charges "based on hits on keyword phrases specified in . . . the Contract." (*Id.*) The parties allegedly orally modified the Contract in June 2009, "by basing charges on a 'per click' basis, that is, the number of times visitors 'clicked' on Plaintiffs' advertising appearing on Google." (*Id.*) Defendants allegedly made charges to Plaintiffs' credit card accounts from May 2009 through December 2009, and from February 2010 through November 2010. (*Id.* at ¶ 17.)

Plaintiffs allege that, "[w]ithout Plaintiffs' knowledge or consent, in about July 2010, Defendants returned to keyword rather than 'per click' invoicing[,]" and that "[i]n 2010, Defendants inexplicably began invoicing Plaintiffs for greatly increased amounts." (*Id.* at ¶¶ 18, 19.) In December 2010, Plaintiffs requested that Defendants provide documentation to justify the "unusually large charges." (*Id.* at ¶ 19.) Defendants refused Plaintiffs' request, and Plaintiffs subsequently notified them that no further charges were authorized to Plaintiffs' credit cards until the documentation was provided. (*Id.*)

In January 2011, Plaintiffs disputed Defendants' charges directly with American Express, and Defendants opposed the dispute. (*Id.* at ¶ 20.) In apparent response to the dispute, Defendants sent Plaintiffs "a few highly redacted Google

account records" on February 22, 2011. (*Id.* at ¶ 21.) Plaintiffs allege the records "showed that Defendants had systematically lied to Plaintiffs about the number of 'clicks' and keyword hits realized, thus grossly overcharging Plaintiffs for services, and charging for services never provided and results never obtained." (*Id.*) Specifically, Plaintiffs allege the records "showed that Defendants diverted Plaintiffs' funds to their own Google advertising, billing Plaintiffs for Defendants' own Google keywords and clicks, thereby doubling, tripling or even quadrupling the charges Defendants invoiced to Plaintiffs taken by direct credit card charging." (*Id.* at ¶ 23.)

Plaintiffs allege, for example, that Defendants' records for May 2010 show that Plaintiffs were charged for thirty-two keywords, when only five of those keywords appeared on Plaintiffs' price list, and only one of them was used; and that Plaintiffs were charged for seventeen keywords in September 2010, when only six of those keywords appeared on Plaintiffs' price list, and again only one of them was used. (*Id.* at ¶ 24.) Defendants charged Plaintiffs' American Express card $12,865 in May and $8,680 in September, when, according to Plaintiffs, only $400 was actually justified and authorized for each month. (*Id.*)

In April 2011, Plaintiffs hired a "Google advertising expert" to analyze Defendants' records. (*Id.* at ¶ 25.) According to Plaintiffs, the expert determined that "the number of 'clicks' reported by Defendants was unsubstantiated and impossible[,]" and that the web logs from Plaintiffs' web server showed a routing from Plaintiffs' website to websites in Texas and California, states in which Plaintiffs believe Defendants formerly or now reside. (*Id.* at ¶¶ 25, 26.) Plaintiffs allege that they have suffered damages in excess of $160,000. (*Id.* at ¶ 30; Prayer.)

Finally, Plaintiffs allege on information and belief that there exists a unity of interest and ownership between Ms. Singla and TMI such that Ms. Singla is the alter ego of TMI. (*Id.* at ¶ 7.) Ms. Singla is described as TMI's sole officer, director, and shareholder, and both TMI and Ms. Singla are described in the FAC as residing and

doing business at 13565 Lavender Way, San Diego, California. (*Id.* at ¶¶ 2-3, 6.) Plaintiffs further allege that Ms. Singla used TMI to misappropriate Plaintiffs' advertising funds and then used those funds to advertise her own business, TMI. (*Id.* at ¶ 7.) Plaintiffs also allege that adherence to TMI's corporate existence would sanction fraud and promote injustice, as TMI is insolvent and unable to pay Plaintiffs' damages. (*Id.*)

### B. New Allegations

Pursuant to Civil Local Rule 15.1(c), "[a]ny amended pleading filed after the granting of a motion to dismiss or motion to strike with leave to amend, must be accompanied by a version of that pleading that shows --- through redlining, underlining, strikeouts, or other similarly effective typographic methods --- how that pleading differs from the previously dismissed pleading." Civ. L.R. 15.1(c). Plaintiffs have complied with this rule. (ECF No. 51.)

#### 1. First, Second, Third, and Fifth Causes of Action

In the SAC, Plaintiffs revised their first, second, third, and fifth causes of action to bring these claims only on behalf of WWT and Laxmi Chand. (*Id.* at 7-12.) Plaintiffs also removed sentences relating to the amount of damages in the first, second, and fifth causes of action. (*See id.* at 7-13.)

#### 2. Fourth Cause of Action

Plaintiffs revised their fourth cause of action to state a claim for conversion by theft based on California Penal Code section 496. (*See id.* at 10-12.) Plaintiffs allege Defendants received and withheld money from Plaintiffs through conversion or theft by false pretense. (*Id.* at ¶ 43.) Specifically, Plaintiffs allege that from about February 2009 through February 2011, Defendants made repeated misrepresentations of material fact to Plaintiffs, with the specific intent to defraud Plaintiffs "by gaining consensual access to make charges to Plaintiffs' American Express card accounts to thereafter make excessive, unearned, and fraudulent charges thereon." (*Id.* at ¶¶ 43-44.)

The alleged misrepresentations include the following: (1) "Plaintiffs were being billed on a keyword basis"; (2) Plaintiffs were being billed "only on keywords actually approved by Plaintiffs and utilized in Plaintiffs' Google advertising campaigns"; and (3) that the number of "clicks" and keywords invoiced to Plaintiffs was true and accurate. (*Id*. at ¶ 43.) Plaintiffs further allege that "Defendants created and gave to Plaintiffs fictitious reports and statistics to justify overbilling Plaintiffs for services purportedly rendered, and billing Plaintiffs for services never performed or results never obtained." (*Id*.) Defendants also allegedly "diverted Plaintiffs' funds to their own Google advertising, billing Plaintiffs for Defendants' own Google keywords and clicks, thereby doubling, tripling or even quadrupling the charges . . . to Plaintiffs' American Express card accounts." (*Id*.)

### 3. Old Sixth Cause of Action

Plaintiffs deleted their sixth cause of action for Declaratory Relief for Accounting. (*Id.* at 13-14.)

### 4. New Sixth Cause of Action

Plaintiffs amended their UCL claim to allege that Defendants' practices constitute "unlawful" business practices premised on Penal Code section 496. (*Id*. at ¶ 54.)

## II. STATEMENT OF LAW

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002)). "However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc.*, 896 F.2d at 1555, n. 19. Documents specifically identified in the complaint whose authenticity is not questioned by the parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statute on other grounds); *see also Branch*, 14 F.3d at 453-54. Such documents may be considered, so long as they are referenced

in the complaint, even if they are not physically attached to the pleading. *Branch*, 14 F.3d at 453-54; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (rule extends to documents upon which the plaintiff's complaint "necessarily relies" but which are not explicitly incorporated in the complaint). Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Fecht*, 70 F.3d at 1080 n. 1. Additionally, the court may consider materials which are judicially noticeable. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

### B. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). Consequently, a "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted). "For the purposes of ruling on a motion to dismiss for want of standing," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000).

The "irreducible constitutional minimum" of Article III standing contains three elements: (1) "the plaintiff must have suffered an 'injury in fact'"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61. The injury in fact must be an

invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Id.* at 560 (citation omitted). Furthermore, to satisfy the casual-connection prong, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Furthermore, "[s]tanding must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

### III. DISCUSSION

#### A. California Penal Code Section 496

In the FAC, Plaintiffs alleged a common law conversion claim, which the Court dismissed, finding, as dictated by relevant case law, that the dispute was "more akin to a dispute over a bill than it is to outright theft." (ECF No. 47 at p. 17.) Plaintiffs now bring a "conversion by theft" claim based on California Penal Code section 496 ("Section 496"). Defendants move to dismiss the Section 496 claim, arguing the "new claim" should be denied because of Plaintiffs' inexplicable delay and prejudice in bringing the claim, and because it is inapplicable to the facts of this case.

As an initial matter, Plaintiffs argue in their opposition they are not bringing a Section 496 claim, but rather a "theft by false pretenses" claim, which, as alleged, is a hybrid conversion/Section 496 claim. However, as Plaintiffs are seeking relief,

including treble damages, under Section 496, the Court will construe it as a Section 496 claim. (*See* SAC at ¶ 45, Prayer for Relief.)[1]

### 1. Section 496 as a New Claim

California district courts have occasionally considered new claims submitted in an amended complaint where the prior order of dismissal granted leave to amend without limitation. *See Topadzhikyan v. Glendale Police Dept.*, No. CV 10–387, 2010 WL 2740163, at *3 n. 1 (C.D. Cal. July 8, 2010) (declining to strike new claims where Court granted leave to amend without limitation); *Gilmore v. Union Pac. R.R. Co.*, No. 09–cv–02180, 2010 WL 2089346, at *4 (E.D. Cal. May 21, 2010) (finding that Plaintiff was not required to seek leave to add new claims where Court granted leave to amend without limitation and Defendants would not be prejudiced by addition of claims).

In other cases, however, where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken. *See, e.g., DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (finding that plaintiffs were required to seek leave of court to add new claims, where leave to amend was previously given to cure deficiencies in certain specified claims and thus limited in scope); *Kennedy v. Full Tilt Poker*, No. CV 09–07964, 2010 WL 3984749, at *1 (C.D. Cal. Oct. 12, 2010) (stating that court previously struck amended complaint because plaintiffs failed to seek leave to add new claims or defendants); *Andrew W. v. Menlo Park City Sch. Dist.*, 2010 WL 3001216, at *2 (N.D. Cal. July 29, 2010) (agreeing that new claims should be stricken because prior order did not grant leave to add new claims, but construing plaintiff's

---

[1] The Court notes that Plaintiffs are also contending Usha Chand has standing pursuant to Section 496 and that Section 496 provides the basis for the "unlawful" prong of its UCL claim. Plaintiffs cannot argue both that they are not bringing a Section 496 claim and that it confers standing and provides the basis for other claims.

opposition as belated motion for leave to amend).

In this case, the prior order granting leave to amend was given to cure specific deficiencies in the FAC, and Plaintiffs were therefore required to seek leave from the Court before adding new claims. However, in the interest of judicial economy, and because the issue was briefed by the parties, the Court will consider Plaintiff's opposition to be a belated motion for leave to amend. *See Andrew W.*, 2010 WL 3001216, at *2.

No scheduling order has been issued in this case setting a deadline for amending the complaint. Accordingly, any request for leave to amend is governed by Rule 15 of the Federal Rules of Civil Procedure. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 15, courts should "freely" give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). After a responsive pleading is filed, "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson*, 975 F.2d at 607.

Defendants argue leave to amend should be denied because there was undue delay in bringing the claim, the claim is futile, and they will be prejudiced by the amendment. "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Hawaii*, 902 F. 2d 1385, 1387 (9th Cir. 1996) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971)). Defendants argue they will be prejudiced because they have not been on notice since the initiation of this lawsuit that they could be subjected to treble damages and attorneys' fees for allegedly violating a Penal Code section related to the receipt of stolen property. (ECF No. 49-1 ("Mot.") at p. 13.) As this case is still at the motion to dismiss stage, however, the Court does not find that Defendants have established prejudice. Moreover, the Court does not find that there was undue delay or, as discussed below, that amendment would be futile. Accordingly, the Court grants Plaintiffs leave to amend to add a Section 496 claim.

### 2. Plaintiffs Plausibly Allege a Section 496 Claim

Section 496(a) provides, in relevant part:

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment . . . . A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property.

Cal. Penal Code § 496(a). Under Section 496(c), "[a]ny person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." Cal. Penal Code § 496(c).

Proving a Section 496 violation generally requires establishing that (a) the property was stolen, and (b) the defendant was in possession of it, (c) knowing it was stolen. *See Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009) (citing *People v. Anderson*, 210 Cal. App. 3d 414, 420 (1989)); *see also Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 213 (2015). The Legislature's goal in enacting Section 496 was to "eliminate[e] markets for stolen property." *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 18 (2009). To achieve this goal, the statute, "broadly allows *anyone* injured" by the knowing purchase, receipt, concealment, withholding, or sale of stolen property to bring a civil action. *Id*.

In the SAC, Plaintiffs do not allege that Defendants purchased or sold stolen property. Rather, they allege Defendants stole the property, *i.e.*, received the property by means of false pretense or fraudulent misrepresentation, and then concealed the theft and withheld the property. (SAC at ¶¶ 43, 44.) Defendants argue the statute is inapplicable because "there are no allegations in the SAC that suggest [D]efendants

received or purchased stolen property," and the instant action is clearly "not the type the legislature intended to protect against with the enactment of subsection (c)." (Mot. at pp. 9-10.)

Although California courts initially "found it logically impossible for a thief who ha[d] stolen an item of property to buy or receive that property from himself," the Legislature amended Section 496 in 1992 to authorize a conviction for receiving stolen property even though the defendant also stole the property, provided he or she has not actually been convicted of the theft. *See People v. Allen*, 21 Cal. 4th 846, 854-58 (1999) (citing *People v. Tatum*, 209 Cal. App. 2d 179, 183 (1962)). While the amendment only explicitly addresses the criminal implications of Section 496, as discussed below, the few California courts that have addressed the statute in the civil context, have similarly permitted civil suits under Section 496 against a defendant who allegedly stole the property at issue.

In *Citizens of Humanity, LLC*, the plaintiff, a manufacturer of exclusive denim apparel, brought suit against the owner and operator of retail stores selling its jeans, alleging the sale of stolen property under Section 496. *Citizens of Humanity, LLC*, 171 Cal. App. 4th at 6-8. The plaintiff alleged the defendant was selling jeans it may have stolen directly from the plaintiff. *Id*. Because the facts alleged in the complaint were that the defendant "obtained and sold knowingly stolen jeans; and [the plaintiff] is the manufacturer of those jeans, who allegedly suffered commercial injury by [the defendant's] sale of stolen merchandise," the court found the plaintiff's allegations were sufficient to allege a civil violation of Section 496. *Id*. at 18. Although the court focused its discussion on whether or not the alleged *sale* of stolen merchandise was sufficient to state a claim under the statute, it did not find the defendant was an improper defendant because it was also potentially the thief.

In *Bell v. Feibush*, 212 Cal. App. 4th 1041 (2013), the plaintiff alleged that she was induced by false pretenses to loan the defendant $202,500 and was never repaid, in violation of Section 496. *Id.* at 1043-44. A California Court of Appeal affirmed

the entry of default judgment in favor of the plaintiff, and the award of damages on the plaintiff's breach of contract and fraud causes of action, and treble damages on her Section 496 cause of action. *Id*. at 1050.  In doing so, the court addressed several arguments raised by the defendant which are relevant to determining whether Section 496 applies in this case.  First, the court addressed whether a criminal conviction under Section 496(a) is a prerequisite to civil liability under Section 496(c).  *Id*. at 1044-47.  After analyzing the plain language of the statute, case law, and the legislative history, the court held that a criminal conviction is not a prerequisite.  *Id*.

Next, the court addressed the defendant's concern that awarding damages under Section 496(c) "opens the door to any collecting creditor to claim that a breach of contract action constitutes a fraud, and in turn constitutes a theft, under the California Penal Code for purposes of [section] 496(a)."  *Id.* at 1047.  With reference to California Penal Code section 484(a), which describes acts constituting theft, and California Penal Code section 532, which defines criminal fraud, the court held that Section 496(a) extends to property "that has been obtained in any manner constituting theft," which includes theft by false or fraudulent representation or pretense.  *Id*. at 1048.

The defendant also argued he could not be liable for both theft and receiving stolen property under Section 496.  *Id*.  Referring to the last paragraph of Section 496(a), the court acknowledged that "a person who obtains property by theft may be convicted for theft or for receiving stolen property, but not both."  *Id*. at 1049 (citing *People v. Allen*, 21 Cal. 4th 846, 857-61 (1999)).  If this principle were applied to the defendant's civil liability under section 496(c), the court stated the defendant "would not be liable for damages under the breach of contract and fraud causes of action *and* treble damages under [Section 496]."  *Id*. (emphasis added).  The court then noted that although the defendant was awarded damages on her breach of contract and fraud causes of action, and treble damages on her Section 496 cause of action, the trial court instructed no double recovery was permitted.  *Id*.  Therefore, the plaintiff's recovery

on all three causes of action could not exceed the amount of treble damages under Section 496. *Id*. The Court of Appeal affirmed this award.

Lastly, the defendant argued that permitting the plaintiff "to recover treble damages under section 496(c) is contrary to public policy and permits litigants to circumvent limitations on remedies." *Id*. While mindful of the defendant's policy concerns, the court found that based on "straightforward statutory interpretation," the defendant could be held civilly liable under Section 496. *Id*.

Here, Plaintiffs allege theft by false pretense and fraudulent misrepresentation. The statute applies to every person who receives, conceals, or withholds any property that "has been obtained in any manner constituting theft." Cal. Penal Code § 496. In construing the phrase "obtained in any manner constituting theft," the *Bell* court, in the context of a civil action, refers to California Penal Code section 484, which describes acts constituting theft. *See Bell*, 212 Cal. App. 4th at 1048. Under section 484, the following constitutes theft: "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[ing] any other person of money." Cal. Penal Code § 484(a). Theft by false pretenses has three elements: "(1) a false pretense or representation, (2) the intent to defraud the owner of his or her property, and (3) the false pretense or representation materially influenced the owner to part with the property." *Carrillo-Jaime v. Holder*, 572 F.3d 747, 752 (9th Cir. 2009) (citation omitted), abrogated on other grounds by *Descamps v. United States*, 133 S.Ct. 2276 (2013). "[T]heft by false pretenses may be accomplished *with* the owners' consent." *Id*.

This Court previously held that Plaintiffs had sufficiently alleged a cause of action for fraud under Federal Rule of Civil Procedure 9(b), which has substantially similar elements.[2] (*See* ECF No. 47 at p. 15.) Plaintiffs re-allege these same facts to

---

[2] To state a claim for fraud in California, a plaintiff must allege "[1] a false representation, [2] knowledge of its falsity, [3] intent to defraud, [4] justifiable reliance, and [5] damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

establish theft by false pretense and fraudulent misrepresentation in its Section 496 claim. (*See* SAC at ¶¶ 43-44.) Under Section 496, a plaintiff must also allege that the defendant had knowledge the property was stolen or obtained in any manner constituting theft. *See* Cal. Penal Code § 496(a). In the SAC, Plaintiffs do allege that Defendants had knowledge the property was obtained in a manner constituting theft. (*See* SAC at ¶ 44.) Based on the foregoing, because Plaintiffs allege Defendants knowingly received, concealed, and withheld their property, which had been obtained by means of false or fraudulent representations or pretense, the Court finds they have sufficiently alleged a claim under Section 496.

### B. Unlawful Prong of Plaintiffs' UCL Claim

"Section 17200's unlawful prong borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012) (quoting *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999)) (internal quotations omitted). Violations of almost any law, federal or state, may serve as a sufficient predicate for a claim under the UCL's "unlawful" prong. *Id.* However, violations of the common law (*e.g.*, breach of contract, common law fraud) are insufficient to satisfy the unlawful prong. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074-75 (C.D. Cal. 2003).

The Court previously held that Plaintiffs failed to state a claim under the unlawful prong of the UCL. Plaintiffs have amended their claim to allege that Defendants' violation of Section 496 serves as the predicate claim for the unlawful prong. (SAC at ¶ 54.) Defendants move to dismiss on the basis Plaintiffs have failed to allege a Section 496 claim. Because the Court has determined Plaintiffs have sufficiently alleged a Section 496 claim, the Court **DENIES** Defendants' motion to

---

Cir. 2003) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)) (internal quotations omitted).

dismiss Plaintiffs' UCL claim under the unlawful prong.

### C. Article III Standing

The Court previously granted Defendants' motion to dismiss plaintiff Usha Chand for lack of standing, with leave to amend. (ECF No. 47 at p. 9.) In the SAC, Usha Chand does not assert claims for breach of contract, fraud, money had and received, and breach of implied covenant of good faith and fair dealing against Defendants. Rather, Usha Chand only asserts Section 496 and UCL claims against Defendants.

Defendants move to dismiss Usha Chand for a second time, arguing she lacks standing to pursue a "single claim against Defendants" because she does not allege an "injury in fact." (Mot. at p. 6.) In response, Plaintiffs argue Usha Chand has standing to bring claims under Section 496 and the UCL due to Section 496's broad provision that "[a]ny person who has been injured" may bring a private right of action. *See* Cal. Penal Code § 496(c).

In its prior order, the Court addressed whether Usha Chand had established Article III standing. (*See* ECF No. 47 at pp. 7-8.) "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya*, 658 F.3d at 1067. In order to satisfy Article III standing,

> a plaintiff must show (1) [s]he has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Braunstein v. Ariz. Dept. of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (citing *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 868-69 (9th Cir. 2002)). Plaintiffs have not alleged or presented any new facts that confer Article III standing, not to be conflated with statutory standing, on Usha Chand. *See Maya*, 658 F.3d at 1067. Accordingly, the Court finds Defendants have failed to establish that Usha Chand has Article III standing to assert claims under Section 496 or the UCL.

1    Plaintiffs further argue that Usha Chand cannot be dismissed because of the
2 following provision of Rule 17 of the Federal Rules of Civil Procedure:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).  As the Court is not dismissing this "action" for failure to prosecute in the name of the real party in interest, the Court finds this provision of Rule 17 does not apply.

Based on the foregoing, and the reasoning set forth in the Court's prior order dismissing Usha Chand, Defendants' motion to dismiss Usha Chand for lack of Article III standing is **GRANTED**.  Because Plaintiffs have demonstrated they cannot allege facts sufficient to establish Article III standing, the Court finds amendment would be futile and Usha Chand is **DISMISSED WITH PREJUDICE**.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 49) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff Usha Chand is **DISMISSED WITH PREJUDICE** from this action for lack of Article III standing.

IT IS SO ORDERED.

DATED:  March 30, 2016

Hon. Cynthia Bashant
United States District Judge